U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED
2010 MAR -3 P 3:03
JON W. SANFILIPPO
CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

Danny L. Wilber, Petitioner,
**Full Name** *(under which you were convicted)*

285482
**Prisoner Number**

Waupun Correctional Institution
**Place of Confinement**

vs.

Michael Thurmer, Respondent.
**Authorized Person Having Custody of Petitioner**

**Docket No.** 10-C-0179
*(to be supplied by Clerk)*

## PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254
## BY A PERSON IN STATE CUSTODY

**Caution:** THIS IS NOT THE FORM TO BE USED IF YOU ARE CHALLENGING A FEDERAL CONVICTION OR SENTENCE OR IF YOU ARE A PRETRIAL DETAINEE CHALLENGING YOUR PRECONVICTION CUSTODY, A FEDERAL PRISONER CHALLENGING THE EXECUTION OF YOUR SENTENCE, OR AN ACTION TAKEN BY THE BUREAU OF PRISONS.

## I. SUBJECT OF THIS PETITION

A. Name and location of the state court that entered the judgment of conviction which you are challenging Circuit Court Branch 5 Milwaukee County State of Wisconsin

B. Criminal docket or case number 2004CF000609

C. Date of the judgment of conviction 06-20-2005

D. Date of sentencing 06-17-2005

E. Length of sentence Life - Eligible for release in 40 years.

F. In this case, were you convicted on more than one count or of more than one crime?

☑ Yes ☐ No

G. Identify all crimes of which you were convicted and sentenced in this case First-Degree Intentional Homicide / Use of a dangerous Weapon

H. What was your plea? *(Check one)*

☑ Not guilty ☐ Guilty ☐ Insanity plea ☐ Nolo contendere *(no contest)*

If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

I. If you went to trial, what kind of trial did you have? *(Check one)*

☑ Jury ☐ Judge only

## SUBJECT OF THIS PETITION - *continued*

J. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes ☑ No

If yes, state the type(s) of hearing or proceeding ______

## II. DIRECT STATE APPEAL OF CONVICTION

A. Did you appeal from the judgment of conviction?

☑ Yes ☐ No

If yes, attach the decision(s) that resolved your appeal and answer the following questions:

1. Date of filing appeal 01-07-2008
2. Grounds raised (1) Did the circuit court erroneously exercise its discretion by allowing "burned shoes" evidence to establish consciousness of guilt? (2) Did the circuit court erroneously exercise its discretion when it ordered Petitioner to appear before jury visibly bound to a wheelchair during closing argument?
3. Result Affirmed
4. Date 09-03-2008

B. Did you seek further review by the highest state court?

☑ Yes ☐ No

If yes, attach the decision(s) that resolved your petition for review and answer the following questions:

1. Date of filing of petition for review 10-02-2008
2. Grounds raised (1) Is evidence of consciousness of guilt admissible if the proposed evidence is not attributable to Petitioner? (2) Did the circuit court use of visible restraints violate Petitioner's constitutional right to a fair trial?
3. Result Denied
4. Date 12-09-2008

**DIRECT STATE APPEAL OF CONVICTION** - *continued*

C. Did you file a petition for certiorari in the United States Supreme Court?

☐ Yes ☑ No

If yes, attach the decision(s) that resolved your petition for certiorari and answer the following questions:

1. Date of filing petition for certiorari ______

2. Grounds raised ______

______

______

______

3. Result ______

4. Date ______

III. **STATE POST-CONVICTION RELIEF OTHER THAN DIRECT APPEAL**

A. Other than the appeals listed above in Section II, have you previously filed any other state petitions, applications, or motions concerning **this** state judgment of conviction?

☐ Yes ☑ No

If yes, attach the decision(s) that resolved your application for state post-conviction relief and answer the following questions:

1. Name of court ______

2. Docket or case number ______

3. Date of filing ______

4. Type of petition, application, or motion filed ______

5. Grounds raised ______

______

______

6. Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes ☑ No

7. Result ______

**STATE POST-CONVICTION RELIEF OTHER THAN DIRECT APPEAL**- *continued*

8. Date ______

9. Did you appeal to the highest state court having jurisdiction over the action taken on your first state petition, application, or motion?

   ☐ Yes ☑ No

B. If you filed a second petition, application, or motion, attach the decision and answer the following questions:

1. Name of court ______

2. Docket or case number ______

3. Date of filing ______

4. Type of petition, application, or motion filed ______

5. Grounds raised ______

6. Did you receive a hearing where evidence was given on your petition, application, or motion?

   ☐ Yes ☑ No

7. Result ______

8. Date ______

9. Did you appeal to the highest state court having jurisdiction over the action taken on your second state petition, application, or motion?

   ☐ Yes ☑ No

C. If you filed a third petition, application, or motion, attach the decision and answer the following questions:

1. Name of court ______

2. Docket or case number ______

3. Date of filing ______

## STATE POST-CONVICTION RELIEF OTHER THAN DIRECT APPEAL- *continued*

4. Type of petition, application or motion filed ______

5. Grounds raised ______

6. Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes ☑ No

7. Result ______

8. Date ______

9. Did you appeal to the highest state court having jurisdiction over the action taken on your third state petition, application, or motion?

☐ Yes ☑ No

## IV. GROUNDS FOR RELIEF

For this petition, state **every** ground supporting your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**CAUTION:** To proceed in the federal court, you must ordinarily first exhaust (*use up*) your available state-court remedies on each ground on which you request action by the federal court.

Ground One Whether the State Court erred when it held Petitioner's constitutional rights were not violated when prosecutor inferred Petitioner's consciousness of guilt without necessary legal or factual foundation, and without establishing a direct connection of prejudicial evidence to Petitioner?

**Supporting FACTS** *(Briefly summarize the facts without citing cases or law.)*

At Petitioner's trial, the State wished to establish Petitioner's consciousness of guilt by showing that somebody had attempted to destroy what might have been evidence (burned shoe soles) at an address associated with Petitioner within 24 hrs of the death of the victim. The

Case 1:10-cv-00179-WCG Filed 03/03/10 Page 6 of 33 Document 1

State asserted that it was possible the shoes fit the Petitioner, it conceded that it could not prove that the shoes were Petitioners, and conceded that it could not establish that Petitioner burned the shoes or directed anyone else to do so. Despite all of that, the trial court still allowed the State to present the burned shoes to the jury as "destroyed evidence" that evinced Petitioner's consciousness of guilt.

**If you did not exhaust your state remedies on Ground One, explain why.**

**Ground Two** Whether the State Court erred when it held that Petitioner's Constitutional right to a fair trial was not violated when the trial court required Petitioner to appear before the jury visibly bound to a wheelchair during closing argument?

**Supporting FACTS** *(Briefly summarize the facts without citing cases or law.)*

The trial court ordered Petitioner to appear before the jury visibly bound shackled, hooked up to a stun belt, and strapped to a wheelchair during closing argument of Petitioner's trial. Petitioner had sufficient restrains on that were not visible to the jury prior to the trial court's decision to place him in additional restrains that were visible to the jury. No real security interest were served by such drastic measures other than extreme prejudice to Petitioner.

**GROUNDS FOR RELIEF** - *continued*

If you did not exhaust your state remedies on Ground Two, explain why.

Ground Three Ineffective assistance of Appellate counsel (Post-Conviction), for failing to raise ineffective assistance of Trial Counsel claim on Petitioner's direct appeal for trial Counsel's failure to investigate.

Supporting **FACTS** *(Briefly summarize the facts without citing cases or law.)*

The material issues in dispute at trial was, was it possible (based on all of the physical evidence in relation to the shooting) that the Petitioner could have been the shooter, and inflicted such wound from the area he was standing, and what direction the shot came from. All the physical evidence showed that the shot that killed the victim was fired from the opposite direction of where Petitioner was standing. The State's theory of the case was directly contradicted by the physical evidence. Trial Counsel failed to investigate, and obtain a forensic expert who could have corroborated Petitioner's defense by determining the likely direction the shot was fired from, highlight the inconsistencies and contradictions between the physical evidence, and the State's theory on the one hand, and directly refuted the State's theory on the other.

If you did not exhaust your state remedies on Ground Three, explain why.

Appellate Counsel (Post-Conviction) failed to raise ineffective assistance of trial counsel claim on Petitioner's direct appeal. Dr. Kenneth A. Siegesmund (Forensic Expert) was not discovered untill November of 2009, he was not obtained untill December of 2009, Petitioner did not receive new evidence (Expert Findings) untill January of 2010.

Case 1:10-cv-00179-WCG Filed 03/03/10 Page 8 of 33 Document 1

**GROUNDS FOR RELIEF - *continued***

Ground Four ______________________________________

Supporting **FACTS** *(Briefly summarize the facts without citing cases or law.)*

If you did not exhaust your state remedies on Ground Four, explain why.

**PRIOR FEDERAL CHALLENGES**

A. Have you previously filed any type of petition, application, or motion **in a federal court** regarding the state conviction that you are challenging in this petition?

☐ Yes ☑ No

If yes, attach the decision(s) that resolved your prior federal court challenge and answer the following questions:

1. Name of court ______________________________________

**PRIOR FEDERAL CHALLENGES** - *continued*

2. Docket or case number ____________________

3. Date of filing ____________________

4. Type of petition, application, or motion filed ____________________

5. Grounds raised ____________________

6. Did you receive a hearing where evidence was given on your petition, application, or motion?

   ☐ Yes ☑ No

7. Result ____________________

8. Date ____________________

9. Did you appeal the action taken on your first federal petition, application, or motion to a federal court of appeals?

   ☐ Yes ☑ No

   If yes, attach the decision(s) that resolved your appeal and answer the following questions:

   a. Name of court ____________________

   b. Docket or case number ____________________

   c. Date of filing ____________________

   d. Type of petition, application, or motion filed ____________________

   e. Grounds raised ____________________

Case 1:10-cv-00179-WCG Filed 03/03/10 Page 10 of 33 Document 1

**PRIOR FEDERAL CHALLENGES** - *continued*

f. Result ______

g. Date ______

B. Did you file a petition for certiorari in the United States Supreme Court?

☐ Yes ☑ No

If yes, attach the decision(s) that resolved your petition for certiorari and answer the following questions:

1. Date of filing petition for certiorari ______

2. Grounds raised ______

3. Result ______

4. Date ______

## V. REPRESENTATION

A. Give the name and address of each attorney who represented you in the following:

1. At preliminary hearing Michael L. Chernin
839 North Jefferson Street, Milwaukee, WI 53202

2. At arraignment and plea hearing Michael L. Chernin

3. At trial Michael L. Chernin

4. At sentencing Michael L. Chernin

5. On direct appeal Brian Kinstler, Martin E. Kohler (Kohler & Hart)
735 North Water Street, Suite 1212
Milwaukee, WI 53202

## VI. REPRESENTATION - continued

6. In any state post-conviction proceeding No

7. On appeal from any ruling against you in a state post-conviction proceeding No

## VII. REQUEST FOR RELIEF

State exactly what you want the court to do for you.

Petitioner respectfully ask the Court to grant his Petition for Writ of Habeas Corpus and order relief this Court deems fair and just.

## VIII. DECLARATION UNDER PENALTY OF PERJURY

I, the undersigned, hereby declare under penalty of perjury that the foregoing information is true and correct.

Signed this 24th day of February, 20 10.

Danny L. Wilber
Signature of Petitioner

_______________
(Signature of lawyer, if any)

If you are signing the petition and are not the petitioner, state your relationship to the petitioner and explain why the petitioner is not signing this petition.

Case 1:10-cv-00179-WCG Filed 03/03/10 Page 12 of 33 Document 1

## IX. CERTIFICATE OF INMATE MAILING - *Optional*

If you deposit your petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in your prison/institutional/jail mailing system and attach first-class postage pre-paid, and complete and sign this statement, you will establish the filing date as the date of deposit in that mailing system.

I, the undersigned, hereby declare under penalty of perjury that I placed this petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the prison/institutional/jail mailing system with prepaid, first-class postage on February 28, 2010.
(month, day, year)

Signed this 28th day of February, 20 10.

Danny Wilber
Signature of Petitioner

**COURT OF APPEALS DECISION DATED AND FILED**

**September 3, 2008**

David R. Schanker
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2007AP2327-CR**

**Cir. Ct. No. 2004CF609**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS DISTRICT I**

---

**STATE OF WISCONSIN,**

**PLAINTIFF-RESPONDENT,**

**V.**

**DANNY L. WILBER,**

**DEFENDANT-APPELLANT.**

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MARY M. KUHNMUENCH, Judge. *Affirmed.*

Before Fine, Kessler, JJ., and Daniel L. LaRocque, Reserve Judge.

¶1 KESSLER, J. Danny L. Wilber appeals from a judgment convicting him of first-degree intentional homicide by use of a dangerous weapon

contrary to WIS. STAT. §§ 940.01(1)(a) and 939.63 (2003-04),[1] and from an order denying his motion for postconviction relief. Wilber argues that he is entitled to a new trial because: (1) the trial court erroneously admitted evidence concerning burned shoes to establish consciousness of guilt; and (2) the trial court erroneously exercised its discretion when it ordered that Wilber be placed in a wheelchair with restraints during closing argument. We reject his arguments and affirm.

**BACKGROUND**

¶2 Wilber was convicted of first-degree intentional homicide by use of a dangerous weapon in connection with the January 31, 2004 shooting death of David Diaz. Diaz was shot at an after-hours house party after a fight broke out. It was undisputed that Wilber was present and fought with Diaz and others. However, Wilber's defense was that he was not the shooter.[2]

¶3 At trial, the State sought to introduce evidence that less than 24 hours after Diaz was shot, a pair of shoes was burned in an outdoor grill located at 2548 West Forest Home Avenue, where, the parties stipulated, Wilber was living with his sister at the time of the shooting. For reasons discussed below, the trial court denied Wilber's motion in limine seeking to exclude the evidence and allowed the evidence to be admitted.

[1] All references to the Wisconsin Statutes are to the 2005-06 version unless otherwise noted.

[2] Because Wilber does not challenge the sufficiency of the evidence against him, we provide only this brief summary of the facts concerning the shooting.

Case 1:10-cv-00179-WCG Filed 03/03/10 Page 15 of 33 Document 1

¶4 During closing arguments, Wilber was physically restrained in a manner that was visible to the jury. He was found guilty and sentenced to life in prison, with eligibility for extended supervision after forty years.

¶5 Wilber filed a postconviction motion alleging that the trial court had erroneously exercised its discretion when it admitted evidence of the burned shoes and had Wilber restrained in a visible way during closing arguments. The trial court denied the motion without a hearing. This appeal follows.

## DISCUSSION

### I. Admission of evidence of the burned shoes.

¶6 At issue is whether the evidence of the burned shoes was relevant and, if so, whether it should nonetheless have been excluded because it was unfairly prejudicial. Relevant evidence is defined by WIS. STAT. § 904.01 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Even if evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." WIS. STAT. § 904.03.

> ¶7 In reviewing evidentiary issues, the question on appeal is not whether this court, ruling initially on the admissibility of the evidence, would have permitted it to come in, but whether the trial court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record. If there exists a reasonable basis for the trial court's determination, this court will uphold the trial court's ruling.

Case 1:10-cv-00179-WCG Filed 03/03/10 Page 16 of 33 Document 1

***State v. Kuntz***, 160 Wis. 2d 722, 745, 467 N.W.2d 531 (1991) (internal quotation marks and citations omitted); *see also* ***State v. Davidson***, 2000 WI 91, ¶53, 236 Wis. 2d 537, 613 N.W.2d 606 ("[T]he trial court's exercise of discretion will be sustained if the trial court reviewed the relevant facts; applied a proper standard of law; and using a rational process, reached a reasonable conclusion.").

¶8 In this case, Wilber filed a motion in limine seeking to exclude evidence that burned shoes (more specifically, the soles that remained after the shoes were burned) were recovered from an outdoor grill in the yard of Wilber's residence. Wilber said the State intended to argue that the burned shoes were evidence that Wilber intended to destroy evidence, and that this showed consciousness of guilt.

¶9 According to a police report, the shoes were recovered from a grill in Wilber's yard on February 1, 2004, and a witness reported smelling something burning in the grill the evening of January 31, 2004. Wilber argued that evidence concerning the shoes should not be admitted because there was nothing to connect Wilber to the shoes. Indeed, Wilber asserted, there was evidence that the shoes could not be his, because his feet are size fourteen and a half, and the burned shoes were size 12. Wilber explained:

> No evidence supports the assertion that Wilber was at the location where the burned shoe soles were found on either January 31 or February 01, 2004. No evidence demonstrates that on January 31 Wilber owned or wore shoes having the type of sole recovered on February 01.
>
> The bald assertion anticipated to be opined by the State that the burned shoe soles demonstrate consciousness of Wilber's guilt is completely lacking in foundation or a basis in fact. This evidence cannot reasonably be characterized as relevant and because its introduction poses the threat of unfair prejudice … [it should be excluded].

¶10 The State said that it did not intend to prove the shoes were Wilber's and argued that the unique facts themselves—evidence that shoes and perhaps other items[3] were burned in the backyard of the suspect's residence in the dead of winter within a day of a homicide—were circumstantial evidence of destruction of evidence and consciousness of guilt.

¶11 The trial court denied the motion in limine, concluding that the expected testimony was admissible circumstantial evidence on the issue of consciousness of guilt. The trial court said it found a nexus to Wilber because within 20 hours of a homicide, in the middle of winter, at night, there was a fire in the grill in Wilber's yard. The trial court continued:

> [O]fficers, detectives who are investigating this case find the remnants of what appear to be what one witness might suggest to be clothing and a shoe remnant left in[] the grill. The thinking being that your family—you and the family members that reside there have access to that grill.
>
> ....
>
> It is in this court's opinion admissible circumstantial evidence to which the State can argue to a jury that they can use reasonable inferences using their common experiences in the affairs of life.

The trial court acknowledged that the shoes were not direct evidence tied to Wilber, but found that the evidence had some connection from which a jury could draw reasonable inferences.

[3] The officer found "a large amount of burned material" in the grill but was not able to identify anything other than the soles of two shoes and a partially smoked cigarette. While Wilber complains about references to burned clothes that he asserts were never found in the grill, his argument is focused on the admission of evidence concerning the shoes. Thus, we will not address the details concerning clothing (or lack thereof). ***See State v. Pettit***, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (We generally do not consider arguments inadequately developed.).

Case 1:10-cv-00179-WCG Filed 03/03/10 Page 18 of 33 Document 1

¶12 Ultimately, the jury heard testimony from the woman who lived in the other unit of the duplex where Wilber resided. She testified that on the night of January 31, 2004, she smelled "a real strong smoke odor" and "smoke coming from the barbecue." She said: "I actually looked out my back porch because I thought my house was on fire." She said she did not see anybody by the grill.

¶13 Detective Joseph Erwin testified that on February 1, 2004, he observed the grill in Wilber's yard. He said it contained "burn material" and that when he sifted through it, he found the soles of two shoes, a cigarette butt, ash and charcoal briquettes. Erwin said he was not able to determine who owned the shoes. Detective Carl Buschmann testified that by working with the shoes' manufacturer, he was able to determine that the soles came from a Timberland shoe, size twelve.

¶14 Wilber called as a witness a shoe salesman who testified that Wilber's foot was a size fourteen-and-a-half. On cross-examination, the salesman acknowledged that Wilber was wearing size 13 wide shoes in court, and that there was one-sixth of an inch between the defendant's toe and the front of the size 13 wide shoe. In closing, Wilber's attorney implied that the shoes could not be Wilber's because they would not have fit his feet. In contrast, the State asserted that Wilber could fit into size 13 wide shoes with room at the toe, and therefore could have fit into the shoes that were burned in the grill.

¶15 At issue is whether the trial court erroneously exercised its discretion when it allowed the State to present evidence concerning the burned shoes. The trial court concluded that the evidence was relevant, circumstantial evidence of destruction of evidence that could evince Wilber's consciousness of guilt. Wilber recognizes that destruction of evidence can be probative of guilt, *see* WIS JI—

Case 1:10-cv-00179-WCG Filed 03/03/10 Page 19 of 33 Document 1

CRIMINAL 172,[4] but contends the evidence was inappropriately admitted here because the alleged burning of evidence was not directly attributable to Wilber. The State argues that there is circumstantial evidence that Wilber, or someone acting on his behalf, destroyed evidence from which the jury could infer consciousness of guilt: someone burned items, including a pair of shoes, in a grill in the defendant's yard, at night, in the winter, within 20 hours of the homicide.

¶16 We conclude that the trial court reviewed the relevant facts, applied a proper standard of law, and, using a rational process, reached a reasonable conclusion when it concluded that the circumstantial evidence of destruction of evidence was relevant to Wilber's consciousness of guilt. *See* ***Davidson***, 236 Wis. 2d 537, ¶53. The circumstances of the burning were sufficient to establish a potential link between Wilber and the shoes. From this circumstantial evidence, the jury could infer that evidence was destroyed by Wilber or someone acting on his behalf, and that this evinced consciousness of guilt.

¶17 We further conclude that the trial court did not erroneously exercise its discretion when it concluded that the relevance of the evidence was not substantially outweighed by the risk of unfair prejudice. *See* WIS. STAT. § 904.03.

---

[4] WISCONSIN JI—CRIMINAL 172, entitled "Flight, Escape, Concealment," provides:

> Evidence has been presented relating to the defendant's conduct [after the alleged crime was committed] [after the defendant was accused of the crime]. Whether the evidence shows a consciousness of guilt, and whether consciousness of guilt shows actual guilt, are matters exclusively for you to decide.

Case 1:10-cv-00179-WCG Filed 03/03/10 Page 20 of 33 Document 1

> Evidence is unfairly prejudicial if it has a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case.

***State v. Franklin***, 2004 WI 38, ¶23, 270 Wis. 2d 271, 677 N.W.2d 276 (internal quotation marks and citation omitted). Wilber offers no argument that the evidence was unfairly prejudicial under § 904.03, focusing instead on his contention that it was not relevant due to the lack of a direct connection to Wilber, and on his argument that admission of the evidence was not harmless error. We discern no error by the trial court.

**II. Use of visible restraints during closing argument.**

¶18 During closing argument, Wilber was restrained in a way that was visible to the jury. Specifically, he was seated in a wheelchair and his wrists were chained together. His arm was strapped to the wheelchair. Wilber contends that the trial court erroneously exercised its discretion when it ordered him to be restrained in that manner, and that the visible restraints violated his right to a fair trial. We reject his arguments and conclude that the trial court did not erroneously exercise its discretion when it ordered the use of the restraints during closing argument.

**A. Summary of events leading to the imposition of restraints.**

¶19 As we explain below, the trial court's order for the use of a wheelchair, wrist chains and arm restraints was the last in a series of orders concerning security that were made over the course of the seven-day trial. Less restrictive means of restraint were employed, but they were unsuccessful at controlling Wilber's behavior. Wilber does not challenge the imposition of earlier

Case 1:10-cv-00179-WCG Filed 03/03/10 Page 21 of 33 Document 1

restraints, contesting only the use of the wheelchair[5] and wrist and arm restraints during closing argument because these restraints were actually visible to the jury, unlike the prior restraints.

¶20 The trial court discussed Wilber's behavior and the need for security at least eight times throughout the trial. The trial court's comments on this matter were extensive, composing nearly fifty pages of the transcript. The most relevant events are summarized below.

¶21 On the first day of trial, outside the presence of the jury, the trial court observed Wilber making facial gestures and being disrespectful to the court. It admonished Wilber to control his reactions, noting that his reactions would not look good in front of the jury. At the time this occurred, Wilber's ankles were chained together and the chain was bolted to the floor. These restraints were kept out of sight of the jury by skirting around the prosecution and defense tables.

¶22 On the third day of trial, outside the jury's presence, the trial court made an evidentiary ruling in the State's favor. Just as the trial court was adjourning the proceedings for lunch, Wilber spoke directly to the trial court, complaining that it was deciding issues in favor of the State. The following exchange occurred:

> [WILBER]: It's not new.
>
> THE COURT: Stop it.
>
> [WILBER]: It's not new. What objection haven't you denied of my lawyer's.

[5] It appears that the wheelchair was used as part of the security employed, perhaps to secure the restraints or to more easily transport Wilber. There is no evidence that the wheelchair was needed for health reasons.

Case 1:10-cv-00179-WCG Filed 03/03/10 Page 22 of 33 Document 1

> THE COURT: Stop it.
>
> [WILBER]: You are granting everything the D.A. is throwing at you.
>
> THE COURT: Deputies, in the back with him.
>
> [WILBER]: What haven't you denied, that's nothing new. Put that on the record. I'm speaking up on my behalf. This is my life.
>
> THE COURT: [Counsel], please talk to your client.
>
> [COUNSEL]: I will, your honor.
>
> [WILBER]: You don't intimidate me with that shit, man.
>
> THE COURT: Mr.—Mr. Wilber.
>
> [WILBER]: You gonna hold me in contempt? What, you gonna hold me in contempt? It's my life right here.
>
> THE COURT: Mr. Wilber, I'm going to if you don't —
>
> [WILBER]: Do it.
>
> THE COURT: —settle down and behave.
>
> [COUNSEL]: Danny, please relax.
>
> THE COURT: If you don't behave —
>
> [WILBER]: It ain't doing me no good her overruling—sustaining everything he throw out whether it is bogus or not.
>
> THE COURT: Mr. Wilber, you are doing yourself no good.
>
> [WILBER]: Grab my folder, man. You need to come speak to me too.

Wilber then left the courtroom. The trial court did not discuss the exchange and shortly thereafter, a recess was taken.

¶23 At the beginning of the afternoon session, the trial court discussed Wilber's outburst. The trial court asked Wilber if he could control himself and he

Case 1:10-cv-00179-WCG Filed 03/03/10 Page 23 of 33 Document 1

said he could. The court also noted that additional security had been added, including increasing the number of deputies in the courtroom to four and placing a stun belt on Wilber's arm, under Wilber's clothes. The court stated that it did not believe additional steps would have to be taken because Wilber had indicated he would control his behavior.

¶24    The next day, the trial court provided more explanation about why additional security had been ordered. It explained that on the previous day, after the exchange with the court, Wilber "continued to be highly agitated, not only at them but at anyone back in the bullpen area, as well as [at] his own lawyer for the better part of the lunch hour." The court said the deputies had reported that Wilber made statements which the court paraphrased as: "[I am] not going down for this, you might as well use your gun and kill me now." Finally, the trial court said, Wilber had asked the deputies detailed questions about the path he would walk to the courtroom each morning, what floor he would be coming and leaving from, when he would be coming and going, and which people would have access to that same path. The trial court said this alarmed the deputies, who believed Wilber might try to flee, perhaps with the help of others. For this reason, the Sheriff's Department had recommended the stun belt and the trial court had agreed with that recommendation.

¶25    The trial court said that if there were further problems, two things might occur: Wilber might have his hands secured or he might be removed from the courtroom for the duration of the trial and have to watch the trial via video conference. However, the trial court noted, there had been no additional problems since the stun belt was added and additional deputies were assigned to the courtroom.

¶26 The trial court also noted for the record that three men had approached the trial court's clerk the day before and made comments to her that were unclear, but caused the trial court some concern.[6] In addition, three men unfamiliar to the trial court had watched the trial and were seen next to witnesses who were under a sequestration order. As a result of these incidents, the trial court sequestered the jury for the remainder of the case, requiring them to report in the morning and remain together as a group until the end of each day.

¶27 On the fifth day of trial, the trial court admonished Wilber when it perceived him acting disrespectfully to the court. The trial court asked Wilber's counsel to talk with him again and took a ten minute break to do so.

¶28 On the afternoon of the seventh day of trial, just before closing arguments, Wilber was seated in a wheelchair with his wrists secured and his arm was strapped to the wheelchair with two-inch wide straps. The trial court summarized the events of the previous days and then explained what had caused it to order the wheelchair and additional restraints. The court stated that its instructions to the defendant and the addition of the stun belt apparently were insufficient,

> because on today's date the defendant used absolutely inappropriate, vulgar, profane language to the deputies who were in charge of security of this courtroom, and [this] will not be tolerated or accepted. He also physically fought

[6] The trial court explained:

> The specifics of the comments had to do with whether or not she was going to be getting her fingers ready. Fingers ready for what we could only speculate and so we don't know what that means. The court looks at it, as I think a prudent court does, as an ill-advised comment at best, and—and a possible threat at wors[t].

Case 1:10-cv-00179-WCG Filed 03/03/10 Page 25 of 33 Document 1

> with the deputies, such that they had to decentralize [sic] him in the back hallway leading back to the bullpen.

¶29 The trial court emphasized that Wilber's actions led it to order the additional security, stating:

> [W]e're at the stage where we charge the jury, we have closing arguments, where quite honestly the State is going to be making their closing argument that I'm sure is going to have parts of it that the defendant is going to simply find annoying, wrong, incorrect, lying, disrespectful of him, and if he was already demonstrating to me at the very beginning of these proceedings that he didn't agree with my rulings and was going to act out, God only knows how he's going to react when the State starts making its closing argument....
>
> I'm not prepared to risk that. Not given the history with this defendant.... I will not be dissuaded from having him in any less secure form than he is right now.

¶30 Wilber's attorney objected to the constraints, asserting that Wilber's appearance in the wheelchair was "disturbing because it looks absolutely horrible." He suggested that there were constitutional problems with Wilber's appearance in restraints.

¶31 In response, the trial court reminded counsel that Wilber had been warned and that the use of increased restraints had been progressive. It also referenced an incident that occurred in the same courtroom several years earlier in which a defendant grabbed a deputy's gun, wounded the deputy and was then shot to death by another law enforcement officer. The trial court observed that even though Wilber had been wearing a stun belt, he was still able to "get into it, both physically and verbally" with the bailiffs when they were escorting Wilber to the bullpen.

Case 1:10-cv-00179-WCG Filed 03/03/10 Page 26 of 33 Document 1

¶32 Wilber's counsel urged the trial court to proceed without the wheelchair and wrist and arm restraints. The trial court denied the request, referencing Wilber's prior comments that the deputies should just "shoot him now" and stating: "This is someone who is by his own language and conduct … a security risk and I am not going to ratchet it back down."

¶33 As the trial court proceeded to bring the jury into the room, the prosecutor asked the court if he should see if his office had a sport coat or blazer that Wilber could wear. The trial court responded that it was not necessary and there was no further discussion of covering the arm and wrist restraints.

¶34 The closing arguments occurred without incident. Later, the parties made a record of Wilber's motion for mistrial that was based on his appearance in restraints. The trial court denied the motion.

**B. Legal standards and analysis.**

¶35 At issue is the visible, physical restraint of Wilber during closing arguments. "A criminal defendant generally should not be restrained during the trial because such freedom is 'an important component of a fair and impartial trial.'" ***State v. Champlain***, 2008 WI App 5, ¶22, 307 Wis. 2d 232, 744 N.W.2d 889 (Ct. App. 2007) (quoting ***Sparkman v. State***, 27 Wis. 2d 92, 96-97, 133 N.W.2d 776 (1965)). However, a defendant may be subjected to physical restraint while in court if the trial court "has found such restraint reasonably necessary to maintain order." ***Id.***; *see also* ***State v. Cassel***, 48 Wis. 2d 619, 624, 180 N.W.2d 607 (1970) ("[T]he safety of the court, counsel, witnesses, jurors, and the public may demand shackles on an accused even in the presence of a jury.").

¶36 "A trial court maintains the discretion to decide whether a defendant should be shackled during a trial as long as the reasons justifying the restraints have been set forth in the record." ***State v. Grinder***, 190 Wis. 2d 541, 550, 527 N.W.2d 326 (1995). The court's "'discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination.'" ***Id.*** (citation omitted). The court's decision to restrain a defendant will be upheld unless it can be shown that the court erroneously exercised its discretion. ***Id.***

¶37 Wilber argues that the trial court erroneously exercised its discretion and violated his right to a fair trial by requiring him to appear before the jury bound to a wheelchair. Wilber contends that no real security interests were served by the additional restraints, given that he was already chained to the floor and wore a stun belt. He acknowledges that both his outburst to the trial court on the first day of trial and his physical altercation with deputies on the last day of trial "merited reasonable measures" but asserts that "neither required more stringent measures than those to which Wilber was already subjected." Wilber also argues that the trial court failed to explain "what increased security benefit was obtained" and erroneously considered the shooting that had occurred in the same courtroom several years earlier.

¶38 We conclude that the trial court did not erroneously exercise its discretion when it ordered the additional restraints. There is no question that the trial court engaged in a "'rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination.'" *See **id.*** The trial court took great pains to explain its concerns and each level of increased security that it imposed.

Case 1:10-cv-00179-WCG Filed 03/03/10 Page 28 of 33 Document 1

It warned Wilber numerous times what would occur if there were continued threats to security and decorum. Despite these warnings, on the final day of trial Wilber engaged in a verbal and physical altercation with the sheriff's deputies.[7] The trial court determined that in light of that altercation, the security measures in place were insufficient and additional restraints should be used. We discern no erroneous exercise of discretion.[8]

¶39 We reject Wilber's suggestion that the trial court's reference to the courtroom shooting that occurred three years earlier renders its discretionary determination erroneous. The trial court's reference to that shooting was only one of myriad facts the trial court discussed, and it did not discuss it for long. The trial court did not use that shooting incident to make an automatic, unreasoned judgment about Wilber's case. Rather, the record reveals extensive discussion and thought went into each decision about security.

¶40 We conclude that the trial court did not erroneously exercise its discretion when it ordered the additional restraints for closing arguments. The record provides ample support for the trial court's conclusion that restraints were necessary to maintain order and ensure the safety of the participants. *See*

---

[7] At no time has Wilber contested the trial court's summaries of his behavior inside and outside the courtroom.

[8] The trial court offered to give the jury a cautionary instruction about the use of restraints. *See **State v. Champlain***, 2008 WI App 5, ¶33, 307 Wis. 2d 232, 744 N.W.2d 889 (Ct. App. 2007). ("[W]henever a defendant wears a restraint in the presence of jurors trying the case, the court should instruct that the restraint is not to be considered in assessing the proof and determining guilt."). However, Wilber's counsel declined the instruction. Counsel said he doubted that any instruction "could be fashioned, that would take away the impact of what Mr. Wilber was presenting to the jury as a result of the physical constraints placed upon him." On appeal, Wilber twice states that the trial court should have given a jury instruction on restraints, but he does not develop this argument. We decline to address it further. *See **Pettit***, 171 Wis. 2d at 647.

Case 1:10-cv-00179-WCG Filed 03/03/10 Page 29 of 33 Document 1

***Champlain***, 307 Wis. 2d 232, ¶22; ***Cassel***, 48 Wis. 2d at 624. Therefore, we reject Wilber's claim that the use of visible restraints denied him a fair trial.

**III. Wilber's argument that real controversy was not fully tried.**

¶41 In his conclusion, Wilber asserts that this court should grant him a new trial because the real controversy was not fully tried. Specifically, he contends that "[t]he issue of the burned shoes served as a distraction from the real issues at trial—what did the witnesses really see, and was their testimony in court consistent with the physical evidence and their previous statements." It is within our discretion to grant a new trial if the real controversy has not been fully tried. WIS. STAT. § 752.35. We are unconvinced that a new trial is warranted in this case.

*By the Court.*—Judgment and order affirmed.

Not recommended for publication in the official reports.

Case 1:10-cv-00179-WCG Filed 03/03/10 Page 30 of 33 Document 1



David R. Schanker
Clerk

# WISCONSIN COURT OF APPEALS

## OFFICE OF THE CLERK

110 E. Main Street, Suite 215
P.O. Box 1688
Madison, WI 53701-1688

Telephone: 608-266-1880
TTY: 800-947-3529
Fax: 608-267-0640
http://www.wicourts.gov

BRIAN KINSTLER
KOHLER & HART, LLP
735 N. WATER ST., #1212
MILWAUKEE, WI 53202

State of Wisconsin,
Plaintiff-Respondent,
v.
Danny L. Wilber,
Defendant-Appellant.

**Date:** December 9, 2008

**District:** 1
**Appeal No.** 2007AP002327 CR
**Circuit Court Case No.** 2004CF000609

**Remittitur**

This cause was an appeal to review the order(s) of the Circuit Court of Milwaukee County.

**IT IS ORDERED AND ADJUDGED** by this court in an opinion filed on September 3, 2008, that:

Judgment and order affirmed.

Panel: Hon. Fine
Hon. LaRocque
Hon. Kessler

The appeal record is hereby returned to the Clerk of Circuit Court for Milwaukee County.

I certify that the above is a correct transcript of the original order and judgment of the court in the above cause.

David R. Schanker
Clerk of Court of Appeals

**Distribution:**

Court Original
Karen A. Loebel
David J. Becker
John Barrett
Brian Kinstler
Martin E. Kohler



OFFICE OF THE CLERK

**Supreme Court of Wisconsin**

110 EAST MAIN STREET, SUITE 215
P.O. BOX 1688
MADISON, WI 53701-1688

TELEPHONE (608) 266-1880
FACSIMILE (608) 267-0640
Web Site: www.wicourts.gov

December 9, 2008

**To:**

Hon. Mary M. Kuhnmuench
Circuit Court Judge
Safety Building
821 W. State St.
Milwaukee, WI 53233

John Barrett
Clerk of Circuit Court
821 W. State St., Room 114
Milwaukee, WI 53233

David J. Becker
Assistant Attorney General
P.O. Box 7857
Madison, WI 53707-7857

Martin E. Kohler
Brian Kinstler
Kohler & Hart, LLP
735 N. Water St., #1212
Milwaukee, WI 53202

Karen A. Loebel
Asst. District Attorney
821 W. State St.
Milwaukee, WI 53233

You are hereby notified that the Court has entered the following order:

---

No. 2007AP2327-CR     State v. Wilber L.C.#2004CF609

A petition for review pursuant to Wis. Stat. § 808.10 having been filed on behalf of defendant-appellant-petitioner, Danny L. Wilber, and considered by this court;

IT IS ORDERED that the petition for review is denied, without costs.

---

David R. Schanker
Clerk of Supreme Court